MEAD v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1919. Rehearing Denied June 2, 1919.)

No. 3238.

1. WAR ⊜⊶4—ESPIONAGE ACT—HINDERING MILITARY FORCES OR PROMOTING SUCCESS OF ENEMY—FALSE STATEMENTS—PERSONS TO WHOM MADE.

In view of the terms of the Espionage Act and the obvious purposes of its enactment, to constitute a violation of its provisions it is not essential that the false reports or statements intended to hinder the operation of the military forces of the United States, or to promote the success of its enemies, must have been made to persons in the military or naval service of the United States; it being sufficient that they were made to recruits for the Canadian forces.

2. CRIMINAL LAW ⊜⊶304(2)—JUDICIAL KNOWLEDGE—MATTER OF COMMON KNOWLEDGE—WAR.

Courts take judicial notice of the commencement and existence of the war between the United States and Germany, and of the further fact that it has been conducted in conjunction with the United Kingdoms of Great

⊜⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Britain and Ireland and the Dominion of Canada, among other nations, and that to promote the success of Germany is to promote the success of an enemy of the United States.

3. WAR ☞4—ESPIONAGE ACT—FALSE STATEMENTS HINDERING CANADIAN RECRUITING.

Defendant, who made false statements tending to interfere with the successful operation of the Canadian recruiting offices authorized in the United States by Act Cong. May 7, 1917 (Comp. St. 1918, § 10174), violated the Espionage Act by making false statements interfering with the success of the military and naval forces of the United States, and tending to promote the success of its enemies.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

W. E. Mead was convicted of violating the Espionage Act, and brings error. Affirmed.

H. E. Foster, of Seattle, Wash., for plaintiff in error.

Robert C. Saunders, U. S. Atty., Clarence L. Reames, Sp. Asst. Atty. Gen., and Hinman D. Folsom, Jr., all of Seattle, Wash., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The plaintiff in error was charged by indictment with a violation of the Act of Congress of June 15, 1917, c. 30, 40 Stat. 217, known as the Espionage Act, and convicted and sentenced to imprisonment in the penitentiary.

The act provided, among other things, as follows:

"Whoever, when the United States is at war, shall willfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies, * * *" shall be punished, etc. Comp. St. 1918, § 10212c.

It is asserted with much apparent confidence on the part of the plaintiff in error that the indictment is insufficient to state any offense under that statute. It contains two counts, the first of which charges in effect:

That during the times therein stated the United States, as well as the United Kingdom of Great Britain and Ireland and the Dominion of Canada, were and still are at war with the Imperial German government, as the defendant well knew, and that the military and naval forces of the countries mentioned were and still are co-operating and fighting together against the said Imperial German government for the purpose of promoting the success of their armed military and naval forces, of all of which facts the defendant was well aware; that as the defendant well knew, at and during all the times mentioned, any injury done to or inflicted upon the military or naval forces of the Dominion of Canada, or of the United Kingdom of Great Britain and Ireland, and any disloyalty, mutiny, or refusal of duty by any soldier or recruit so engaged, would constitute and be an injury to and would interfere with the operation and success of the military and naval

forces of the United States; that at a certain designated time during the existence and progress of such war the steamship Queen was a vessel belonging to the Pacific Coast Company, a corporation of the state of New Jersey, licensed to do business in the state of Washington, under charter to the Pacific Steamship Company, a corporation of the state of Maine, which charterer was also licensed to do business in the state of Washington, both of which corporations were actually transacting business in that state; that the said steamship was during all of the times mentioned in the indictment duly registered under the laws of the United States, the flag of which country it flew while on the high seas; that on a certain named day during the existence and progress of the said war, and while the said steamship was on the high seas and out of the jurisdiction of any particular state, en route from San Francisco, Cal., to Seattle, in the state of Washington, the said defendant, being a passenger thereon, and within the jurisdiction of the court below, did then and there willfully and feloniously orally make and convey certain false reports and false statements, with the intent to then and there and thereby interfere with the operation and the success of the military and naval forces of the United States, such false statements and reports consisting of the following words, phrases, and sentences:

"I understand that you have given up a job at $150 per month and sold your auto to join the forces. I can give you a thousand reasons why you shouldn't fight. This is a capitalistic war, started by England because she is afraid of Germany corraling commerce. President Wilson is in the same swim with the British in backing up the capitalist. You are a damned fool to take any interest in it whatever."

That said statements were willfully and feloniously made by the defendant to Herbert Kortlang and J. F. Storry, they then and there being, as the defendant well knew, recruits in the Canadian Expeditionary Forces theretofore recruited for the Sixth Field Company of Canadian Engineers, and each of them, as the defendant well knew, being about to proceed to take an active part in the said war on the side and in behalf of the Dominion of Canada and against the armed military and naval forces of the Imperial German government, there being then and there also present, as the defendant well knew, and to whom he then and there made the said false reports and statements, a large number of other recruits of the said Canadian Expeditionary Forces, among whom were M. Long, John Doe McKenzie, John Doe O'Toole, John Doe Ryan, and other recruits whose names are to the grand jurors unknown; that in making and conveying the said false reports and statements the defendant then and there did so willfully and feloniously and with the intent to thereby interfere with the operation and success of the military and naval forces of the United States whereas, in truth and in fact he then and there well knew that the said report and statement:

"I can give you a thousand reasons why you shouldn't fight. This is a capitalistic war, started by England because she is afraid of Germany corraling commerce. President Wilson is in the same swim with the British in backing up the capitalist. You are a damned fool to take any interest in it whatever"

257 F.—41

—and each and every sentence and phrase thereof and each and every of said statements and charges were then and there false and untrue, and were by the said W. E. Mead then and there as aforesaid spoken and uttered to the said Canadian recruits with the intent then and there in the said W. E. Mead to interfere with the operation and success of the military and naval forces of the United States, contrary to the statute in such case made and provided, and against the peace and dignity of the United States of America.

The second count of the indictment is precisely similar to the first, except that it charges the defendant with having willfully made the said reports and statements with the intent to promote the success of the enemies of the United States.

The failure of the indictment to set forth the false reports and statements, in order to give the defendant the necessary information to enable him to prepare for his defense, which was the basis of the judgment of this court in the case of Foster et al. v. United States, 253 Fed. 481, —— C. C. A. ——, sustaining the demurrer to the indictment in that case, was obviated by the pleader in the case at bar; for here the alleged false reports and statements are specifically set forth.

[1] In view of the terms of the act of Congress and the obvious purposes of the enactment, we are unable to hold that in order to constitute a violation of its provisions it is essential that the false reports or statements must have been made to persons in the military or naval service of the United States. In the consideration of such cases it should never be forgotten that war is a matter of life or death, and that a nation in such circumstances is no more powerless to protect its life than is an individual to save his, when attacked, by the use of such force as is necessary. It was in the exercise of that power that Congress passed the act which is the basis of the present indictment. Free speech in times of war is by no means the same thing as free speech in times of peace. The false reports and statements inhibited by the statute under consideration are such as are willfully made or conveyed "with intent to interfere with the operation or success of the military or naval forces of the United States, or to promote the success of its enemies."

[2] Apart from the circumstance that the fact was proved by witnesses in the present case, it does not admit of doubt that the courts take judicial knowledge of the commencement and existence of the present war between the United States and Germany, and of the further fact that it has been conducted in conjunction with the United Kingdom of Great Britain and Ireland and the Dominion of Canada, among other nations, nor does it admit of question that to promote the success of Germany is to promote the success of an enemy of the United States.

The assignments of error respecting the evidence introduced amount to nothing, for the obvious reason that not one of them specifies any evidence of which complaint is made. The charge of the court, we think, fairly presented the case to the jury, whose exclusive province it was to determine the facts.

[3] Congress by its act made it criminal for any one, while this country is at war, to willfully make false statements or convey false re-

ports, "with intent to interfere with the operation or success of the military or naval forces of the United States, or to promote the success of its enemies." And by act approved May 7, 1917 (40 Stat. 39, c. 11 [Comp. St. 1918, § 10175]), expressly authorized its allies, England and Canada, to open recruiting offices in the various cities of the United States. That any interference with such recruiting service necessarily interfered with the success of the military and naval forces of the United States and tended to promote the success of its enemies we consider too plain for argument.

The judgment is affirmed.