STATE, Respondent, *v.* SCHAFFER, Appellant.

(No. 4,316.)

(Submitted March 9, 1921. Decided April 11, 1921.)

[197 Pac. 936.]

*Criminal Law — Sedition — Information — Amendment — Evidence—Intent—State of War—Judicial Notice—Trial—Exceptions—Waiver.*

Sedition—Information—Sufficiency.
1. Language uttered by the defendant during the war, the effect of which was to suggest to the mind that the German government was superior to, and ought to be substituted for, the government

of the United States, *held* to have been seditious under the provisions of Chapter 11, Extra. Session 1918.

Same—Trial—County Attorney—Misconduct—Oral Instructions—Failure to Take Exceptions—Waiver.
2. By his failure to take exceptions to alleged objectionable language used by the county attorney in his opening statement to the jury, and to the giving of oral instructions by the court, defendant waived his right to urge error in either respect.

Same—Evidence of Like Acts Previous to Passage of Sedition Act—Admissibility.
3. Evidence of statements classed as criminal by the Sedition Act were admissible, though made by defendant before the passage of the Act, for the purpose of showing his feelings upon the issue of the war, his trend of mind, the probability that he continued to entertain the same views and gave expression to them at the time he was charged to have uttered the language for which he was on trial.

Same—Intent—Proper Refusal of Instruction.
4. Refusal of an instruction on the question of defendant's intent was properly refused, the controlling feature of the Sedition Act being the effect of the language charged and not the intent in the defendant when uttering it.

Same—Information—Amendment to Conform to Proof Proper.
5. Permission to the county attorney, at the close of the evidence, to amend the information to conform to the proof, where the variance between the charge as originally made and the amendment was not of substance but of form—both alleged seditious expressions conveying the same meaning, was proper.

Same—State of War—Judicial Notice.
6. Courts take judicial notice of the commencement. and existence of a state of war; and where throughout a trial for sedition it was assumed by the prosecution and the defense that a state of war existed between the United States and Germany, the state was relieved from introducing formal proof of that fact.

Same—Information—Counts—Election—When Refusal Proper.
7. Where the state had charged sedition in three counts in substantially the same language, alleged to have been uttered at the same time and punishable as for one offense, refusal to require the county attorney to elect upon which count he would press the charge was not error.

Same—Excessive Punishment—Relief by What Department.
8. So long as the punishment inflicted upon an offender is within the statutory limits prescribed, relief from it on the ground of excessiveness rests with the pardoning power of the executive branch of the government and not with the supreme court on appeal.

*Appeals from District Court, Fergus County; Roy E. Ayers, Judge.*

ANTON SCHAFFER, convicted of sedition, appeals from the judgment and an order denying him a new trial. Affirmed.

*Mr. E. W. Mettler* and *Mr. Chas. J. Marshall*, for Appellant, submitted a brief; *Mr. Marshall* argued the cause orally.

*Mr. S. C. Ford*, Attorney General, and *Mr. Frank Woody*, Assistant Attorney General, submitted a brief; *Mr. L. A. Foot*, Assistant Attorney General, argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

Prosecution for sedition. The charging parts of the three counts of the information are substantially alike, each alleging the use of the following words, *viz.:* That while the United States of America was engaged in war with the imperial government of Germany, the defendant "did willfully, unlawfully, wrongfully, feloniously and seditiously utter and publish disloyal, profane, violent, contemptuous, slurring and abu-

[1] sive language about the form of government of the United States of America as follows: 'This government would be better off under German rule and us Germans could then send over to the foreign countries for men and us Germans do the bossing,' or words substantially the same, contrary to law and the peace and dignity of the state of Montana, all of which utterances were calculated to bring the form of government of the United States of America into contempt, scorn, contumely and disrepute, contrary to the provisions of Chapter 11, Extra. Session Laws of 1918, denouncing sedition." The jury returned a verdict of guilty and left the penalty to be fixed by the court. A motion in arrest of judgment was urged and overruled. The court imposed a fine of $12,000, and judgment was entered accordingly. The appeals are from the judgment and an order denying a new trial.

The argument the attorney general advances against the first assignment of error is that the language used was calculated to discourage enlistment in the army, depress public spirit and weaken the government in its effort to further the war. The defendant insists that the language is not condemned by the Act. To our minds, the words do carry the

insidious suggestion that the imperialistic and autocratic governments of the central powers were superior to, and ought to be substituted for, our own. They do, therefore, reach the mark of disloyalty and resistance to the duly constituted federal and state authorities the Act condemns. Disloyal, contemptuous and slurring words rest more in their effect upon the public mind than in the fact of their use. When the statements attributed to the defendant were made, the stupendous onrush of the German army was under way, threatening destruction to the defending armies, of which our own were a part. The time, the circumstances and the conditions attending their making were, therefore, to be taken into account in judging the purpose their use implied. This thought is given expression in the opinion of the supreme court of the United States, in *Schenck* v. *United States*, 249 U. S. 47, 63 L. Ed. 470, 39 Sup. Ct. Rep. 247, thus: ''The question in every case is whether the words are used in such circumstances, and are of such a nature as to create a clear and present danger that will bring about the substantive evils Congress has a right to prevent. It is a question of proximity and degree.'' This disposes of the questions suggested by the first, fourth, eighth, thirteenth and fifteenth specifications of error, to our complete satisfaction.

To the objectionable part of the opening statement of the [2] county attorney, defendant took no exception, and therefore waived his right to question its propriety. (*State* v. *Lewis,* 52 Mont. 495, 159 Pac. 415.) The same is true of the ninth and tenth specifications of error, in which objection is made because the court gave oral instructions to the jury regarding the verdict they were at liberty to return. The court did no more than tell the jury that their verdict must be a fine alone, a fine or imprisonment, imprisonment and a fine, or not guilty, as it had already done in its written instructions. This was unobjectionable.

The fifth ground of error is that the evidence of statements [3] other than those set up in the information was not competent to prove the state of mind of the defendant on the date

alleged. Upon that point, the general rule is stated in *State* v. *Wyman,* 56 Mont. 600, 186 Pac. 1, in this language: ''Evidence of other acts or declarations of the accused, of a like nature with those constituting the offense charged, is admissible for the purpose of showing the intent, guilty knowledge or motive, in corroboration of the testimony as to the offense charged, to prove the identity of the perpetrator of the crime, or to negative the idea that the particular offense complained of was the result of mere accident or mistake, or the employment of a mere loose word or phrase, or to show that the act complained of was a part of a chain or system of crimes.'' In the present case, the statements were made after this country had declared war, and before the enactment of our sedition law, and were admitted as evidence, over the objection of the defendant. Utterances of a seditious nature, as these were, made before the passage of the statute, were competent for the purpose of showing the feelings of the defendant upon the issue between the warring nations, his trend of mind, the probability that he continued to entertain the same views and might have given vent to the expression constituting the substantive charge against him. (*Magon* v. *United States,* 260 Fed. 811, 171 C. C. A. 537; *Stenzel* v. *United States,* 261 Fed. 161.)

The motion in arrest of judgment challenges the jurisdiction of the state to enact, and of the court to enforce, the Act under consideration. That question was raised, elaborated upon and decided against the contention here made, in *State* v. *Kahn,* 56 Mont. 108, 182 Pac. 107, since affirmed in *State* v. *Wyman, supra.* (See, also, Rev. Codes, sec. 9353.)

Error is also alleged because of the court's refusal to comply [4] with the request of the defendant to submit to the jury the question of his intent to thwart the purpose of the statute. In this the court was right. That point was determined against him by this court, in *State* v. *Smith,* 57 Mont. 563, 190 Pac. 107, where this language is used: ''The legislature intended to prohibit the writing, printing, uttering or publication of any language calculated to incite or inflame resistance to any duly

constituted federal or state authority in the prosecution of the war, regardless of the intent or intention of the offender—to prevent at all hazards the results likely to flow from the commission of the act itself.'' The effect—not the intent—is the controlling feature of the statute.

It is also argued by defendant's counsel that because the [5] court granted the motion of the county attorney to amend the information to conform to the evidence at its close, the defendant was put at a disadvantage in his effort to meet the case against him. The information charged the defendant with saying: ''This country would be better off under German rule.'' The statement proven in evidence was: ''The United States government would be better ruled under German rulers like the kaiser.'' The kaiser was then the dominant spirit in the German government. Evidence tending to controvert one of these statements would tend to contradict the other. If it failed to refute either, the position of the defendant would be still the same. The variance was of form—not of substance, both expressions conveying the same meaning—a meaning clearly within the condemnatory clause of the Sedition Act. In this there was no error.

Courts take judicial notice of the commencement and exist- [6] ence of a state of war. (*Mead* v. *United States,* 257 Fed. 639, 168 C. C. A. 589.) The fact that a state of war existed between the United States and Germany was assumed by the court and counsel throughout the trial, and was sufficient to relieve the state from introducing formal proof upon the subject.

Neither was the defendant hurt by the refusal of the court [7] to require the prosecuting officer to elect upon which count he would press the charge. The obnoxious language charged is substantially alike in all three counts, is alleged to have been made at the same time, is punishable as and for one offense, and was all the defendant was forced to meet in his defense.

The other specifications of error have to do with the sufficiency of the evidence and are not well founded.

After a careful study of all the evidence before us, we are convinced of its competency and of its sufficiency in weight [8] and volume to uphold the verdict of the jury. Whether the punishment placed upon the defendant a burden greater than he ought to have been made to bear, is a matter we may not consider. The record being free from error, this court has no power to revise the sentence nor to modify the judgment, though the penalty imposed may seem greater than the offender deserved. Relief can only be had through the executive branch of the government. (*State* v. *Fowler, ante,* p. 346, 196 Pac. 992.)

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, HOLLOWAY and GALEN concur.

Rehearing denied May 16, 1921.